Thank you. We call the case of U.S. v. Vincent Hsia. Hsia. Hsia? S-H-A? That's my Cantonese pronunciation. Hsia. Docket number 121623. Mr. Goldberger. Yes. May it please the court, my name is Peter Goldberger and it's my privilege to represent Vincent Hsia, who is the appellant here and defendant below. And with the court's permission, I reserve two minutes. Mr. Goldberger. Mr. Hsia was sentenced to serve 25 years imprisonment, where the maximum sentence for the most serious crime of which he was convicted is 20 years, after being advised, in writing, of the 20-year maximum, with the court and the prosecutor remaining silent to that advice. That sentence is infected by... And the defendant. Everybody was silent. I mean, you didn't object, right? Defense counsel, I believe, filled out the... it was tasked to defense counsel to fill out the form and that's how the form was... The application to plead. The application to plead. Yes. It's the only place in the record where the maximum sentence is stated. The court completely... Prior to the prior sentence. Prior to the sentence. Oh, yes. Yes, of course. So that sentence is infected by numerous procedural errors that require a resentencing. The two somewhat novel issues I might say that we've raised regarding the consecutive nature of the sentences might conceivably be avoided by addressing the guideline issues if they were resolved in our favor. But I'll address, if I may, the consecutive sentence issues first and then turn to the guideline issues. Rest of my brief for the remainder. Subject to Your Honor's questions. The first question has to do with the advice that was omitted at the change of plea colloquy. No mention whatsoever of the tax counts and therefore no mention at all of the total maximum sentence that the defendant potentially faced. Just one question. Of course. The judge didn't mention the count one max. The statutory max has to count one to 20 years either. But you don't complain that that wasn't mentioned. You only complain about the tax counts not having been mentioned. That's right. That's right. And that's because... I don't usually explain why I don't... Is that half a Rule 11 argument then? It's not really a Rule 11 argument because in any event there has to be prejudice. The defendant was advised in writing and signed the document saying there was a 20-year maximum for the tax... Are you telling us it's not a Rule 11 argument because you want to avoid VON? Because if it's a Rule 11 argument you really have a problem under VON. Yes. That's right. That's right. And we're not asking for the plea back. So the cases in which the defendant seeks to vacate his plea based on defects in the Rule 11 colloquy are subject to certain rules and requirements which have to do with the prejudice that has to be shown in relation to the error that is claimed. When you say prejudice you mean under the plain error test. Because this is a plain error review. So he has to show that substantial rights were affected. Yes. And I was talking about this class of cases where whatever the kind... whether it be a plain error or an ordinary prejudice requirement, be that as it may, we first have to identify what is the error that the appellant is claiming. The error that the appellant claims is that the sentence is illegal to the extent it exceeds the penalty of which the defendant was advised at the time of his plea. And that's based squarely on this court's precedent in Hawthorne from 1986 where the court established that where the defendant does not seek to withdraw his plea, the maximum that the defendant faces is limited by the advice given when the plea was accepted. Now, Hawthorne was a restitution case, but it wasn't based in any way on the restitution statute. It's also a pre-Vaughn case. Well, that's true, but... That's not an unimportant fact. I think it is with respect... Because Vaughn said the defendant, and I'm paraphrasing, you can't relax and wait to see if the sentence later struck him as satisfactory and then raise it on appeal for the first time, which is what's happened here. The key is in the raise what. In Vaughn, the defendant sought to withdraw his plea and vacate his conviction on that basis. Now, that's a distinction that this court drew in Corso where the defendant looked to a defect in the plea colloquy, not to undo the plea, but to be relieved from an element of the plea agreement. In that case, this is not a plea agreement case. That was the appellate waiver case. That's right. So the court, following the logic that's implicit in your honest question, Judge Barry, would have decided instead, well, the plea, the waiver of the right to appeal is part and parcel of your plea agreement. You weren't advised of the waiver at the time of the plea. The remedy for that is go back and take your plea back if you can meet the requirements for that to show that you wouldn't have pleaded. But that isn't how this court reasoned in Corso. It's not how the court reasoned in Hawthorne. It's not how the Second Circuit reasoned in Conn. The remedy that you seek is that Mr. Shaw be sent back to the district court and resentenced to 20 years? Not more than 20 years. I'm not asking for 20 years. You want a cap, though. But, yes. I thought you said he should get the benefit of what he was told. Right, which is a maximum sentence of 20 years. Oh, that's right. Not 20 years. Well, you don't get told at the time of the plea what your sentence is going to be. But he was sentenced to 25 years? Yes. Yes, but I'm only saying that because we also have guideline issues that would take the range as well below. On this issue, you want to knock off five years? Yes. At least? Yes. Well, on this issue, to put it exactly that way, then to combine your two questions, yes. This goes to the five-year excess. On the abuse of trust in Haspen, I know your time runs, and I wanted you to see if you can address that in the supervisory role. Because I have not found a case that says that a pharmacist occupies a position of trust. That doesn't mean he or she does not. We've all looked, and none of us has found a case of that kind, yet there are plenty of pharmacist prosecutions. So why is a pharmacist in a position of trust? Our position is that he's not, and that, therefore, the adjustment was applied to him incorrectly. Couldn't it be said that he's in a position of public trust? I understand the private trust. But how about public trust, by virtue of licensing, some of his authority under law? Right. You would look to the other kinds of license. How are other licensed professionals treated who the government entrusts with a sort of special authority by virtue of their licenses? And that's why I say in the brief that to use these expressions in common vocabulary terms, there's an attraction to viewing the pharmacist as being in a position of trust. We trust the pharmacist to dispense safely the prescriptions that the doctor gives the pharmacist. But that's not what we mean under the guidelines. Perhaps the closest case, I could be mistaken, but there's a case where a nurse was stealing drugs from a hospital. Who was the victim? I guess the hospital was the victim. But she was found to be in a position of trust. And I'm wondering if you could say that a nurse occupies a position of trust. Why can't you just say a pharmacist who deals with drugs also? The nurse probably occupied the position of private trust, vis-à-vis her employer, the hospital. Is that because there was a victim? Yes. When an employee steals from an employer precious possessions, which the employer does not make readily available to the public, abuses her position to get access to them. The patient did not get those drugs. Right. So the patient was the victim in that case, correct? I don't know the facts of those cases, but it sounds to me like the kind of position of private trust, like a bank teller who steals. The violation of the trust here was in filling out prescriptions. There was no violation of trust as that expression is used in the guidelines. Well, that's the crime. Yes. The crime had to do with filling prescriptions. Filling bogus prescriptions for OxyContin. This is not a doctor writing improper prescriptions in league with the pharmacist. These are ridiculous stolen prescription pads made out by the addicts themselves. Why couldn't you say that the public in general trusts that pharmacists would not fill bogus prescriptions of drugs? I mean, the public in general relies on pharmacists in doing the right thing, filling out the right prescriptions. Yes, and I think that's probably what Judge Wiginton was thinking, that in common parlance, we do trust pharmacists in that way. But this is not what the guidelines mean by a position of trust, where there is substantial discretion conferred on someone to make decisions of how to do something that is then abused in relation to a victim of the crime. The trust then violated in terms of the victim of a crime. The closest cases are really more like the public health kinds of cases in other circuits, and we don't even have that. But you don't need a victim in the private trust situation, but you don't need one in the overall general public trust situation. Well, the public trust cases in this court have been involving public employees who violated their position of trust vis-a-vis the public employer. But you're not arguing you have to be a public employee for the public trust to apply, right? This court has never applied that outside of public employee settings, but I acknowledge there are cases in other circuits. Lawyers and doctors? No, it's like environmental protection, food safety violations, where the milk in Puerto Rico is being distributed to the general public through grocery stores. To be subject to the public trust, you must be a government employee? Or acting in a pervasively-regulated, governmentally-regulated field in which the public is protected from danger of the materials that you are. Isn't pharmacy state-regulated? Don't you need a license to do that? They're closely regulated and not discretionary. This is a very close, factual question. The kind of discretion that a pharmacist exercises, I'm not sure that you and I know exactly what that is. The pharmacist is non-discretionary in filling out the prescription. A pharmacist does what he or she is told. This is a person with a bachelor's degree. We don't know here. How can we say that the error was clear? There's no case law as far as pharmacists. There's precious little case law on the violation of public trust. Even most of the examples in the commentary at the bottom, even those listed for public trust, are really private trust abuses. This is plain error review. Well, this court's way of handling novel questions under the guidelines under plain error review has been to look and see if it is clear under the guidelines as written that there is an error. Here there is under the guidelines as interpreted in this court's cases under 1B1.3. You think this guideline is clear? It is clear that this was a misapplication of the guideline under this court's cases. We don't even know whether private trust or public trust was applied because there was no objection taken to the enhancement. All we know is that abuse of a position of trust was applied. That's true. What was objected to is the role in the offense, and I see my yellow light is coming on. I might want to move forward to say that there is another error which actually has potentially a larger impact on the guideline. Supervisory? The supervisory role. The position of trust is a two-level adjustment, and it's cumulative to the others. But here's another two-level adjustment that has a four-level impact because the role in the offense itself precluded the defendant from getting a safety valve as well. Was this argued to the district court? This was raised. This issue was fully raised. Okay. Do you have three minutes to rebuttal? Two. Two. As you wish. If you want to add one minute, I'd like to hear what you say about the supervisory. Okay. Thank you. So what's missing here about supervised release is the control over another person. The judge found supervisory role based on the prosecutor's showing of the defendant giving these addicts advice about how to fill out the phony prescription pads, and that doesn't qualify as a supervisory role under this court's cases. It was giving a tip to fellow conspirators about how to commit the crime doesn't count, and the distributor of drugs in a drug distribution conspiracy is not a supervisor of the underling. It's more than that, though. It's more than just giving them tips. I mean, he actually gave them the drugs, too, right? Yes, but that's precluded by Belter. He told them how to fill out the prescriptions. He told them when to come to have the prescriptions filled, told them when not to come, when they might get caught, and then actually filled the prescriptions to put the drugs on the street. It's a little more than just giving tips. You said that was excluded. Well, the when to come is tips, to my opinion. In response to Justice Garris, you said that was excluded by? The Belter, B-E-L-T-E-R-T-I-R-E, cited by both parties in the briefs, is having the role of distributor in a drug distribution conspiracy with underlings does not make you a supervisor of those persons. What we don't have is the kind of control over another culpable individual which is required by the cases. You have someone with a more responsible position. We're tempted to say leader because he's more of the big shot, but that doesn't make you automatically a supervisor. So it's like he helped them commit a better crime. Yes. That's what all good conspirators try to do for each other. Thank you, Mr. Garris. I'll come back. Thank you. Mr. Romano. May it please the Court, John Romano for the United States. I'd like to start out, I guess, with the first point, and the defendant says this isn't a Rule 11 case, but that's what this is, and he doesn't want his plea back. And to borrow a phrase, Judge Barry, that's a game set and match in this case. Dominguez-Benitez sets forth the remedy. It's very clear. If you have a Rule 11 error that's unpreserved, you have to show a reasonable probability that, but for the error, you would not have entered the plea. He doesn't want his plea back. It's game over. And to address Hawthorne, because I have to admit, I didn't do maybe as good of a job as I should have in the brief, Hawthorne is not controlling here for at least four reasons. The first reason is, again, it predates Dominguez-Benitez. That's the remedy. Second reason, standard of review, Judge Barry, this is a post-vom case. He has the burden of showing plain error. Hawthorne did not apply plain error. Number three, that case was completely based on Section 3651, which was repealed in 1987. And if I could just go through that really quickly to show why it's distinguishable. Under that statute, as this court explained in Hawthorne, this district court could impose restitution in an amount greater than that directly tied to the counts of conviction, but only where the defendant agreed in the plea agreement or the district court notified the defendant first. In that case, neither of those things happened, yet the court imposed a huge restitution figure much larger than that directly tied to the counts of conviction. This court said that was an illegal sentence. There's nothing illegal about the sentence here. It's well within the statutory maximum. And then the fourth point, which I think is very important, is that the remedy in that case is not what the defendant says it is, and, in fact, it undercuts his argument completely. That case was remanded for the court to impose a restitution order no greater than that directly tied to the counts of conviction, not what the defendant was told about at the Rule 11 hearing. If you read Notes 8 and 13 of the Hawthorne opinion, they make it very clear that the defendant wasn't told in his plea agreement about restitution, wasn't even told at the Rule 11 hearing about restitution, and first heard about restitution when it was imposed. So the court remanded to impose a sentence no greater than the statutory maximum. Here, that's already the case. If you have any questions about Point 1, I'm happy to answer them. Want to go to Point 2? Sure. The abuse of trust enhancement, I mean, I have to credit one of my colleagues for this. The defendant was given the keys to the medicine cabinet. That's essentially what happened here. The public trusts that he is going to fill only good prescriptions. He's not going to fill bogus prescriptions. Wait a minute. Where do you get that from, the public trust to fill good? Why is that entitled him to a public trust enhancement? Well, he's licensed. I mean, he's regulated and licensed, and we think that he's not. Accountants have to do the right thing. Lawyers have to do the right thing. Doctors have to do the right treatment. Pharmacists have to fill out the right prescription. Does that make all of these individuals subject to the public trust enhancement? I think when you use your position in that way, it does. And I can point to it. There's a case I want to give you a cite. Well, wait. Supposing Al Capone's accountant says, you better not put those profits that you got from bootlegging into your tax forms because they'll certainly catch you. Does that make that accountant subject to the public trust enhancement? Probably not, Your Honor. But, I mean, I don't think that that is – it's like – He's not saying that a public license always confers a position of trust. Yes, I'm not saying that. Well, that's what I thought you were saying, but I thought you clarified it. I think that that's certainly a factor in here where he – this is his job. This is what we entrusted him with, and he is completely – But that sounds – it could be negligence. It could be professional negligence. It could be a lawyer we entrusted do the right – give the right advice, doesn't give the right advice. That doesn't subject them to public trust. But, again, first of all, this is a plain error case. And, secondly, I think that we can point to cases that are similar. Slow down. I'm sorry. We can point to similar cases, and nothing that the defendant has pointed to is remotely similar. What is it about a pharmacist that subjects that individual to a public trust enhancement, as opposed to any other licensed individual? Well, I think, first of all, I think certain licensed individuals will, depending on what it is that they are charged with. Here, he's doing exactly what he was given the discretion to do, which is look at prescriptions and not fill bogus ones and flood the streets with oxycodone. And I think, and I want to disagree with the defendant here, pharmacists have a lot of discretion. And all you have to do is look here. That's the essence of the crime he committed. That's what he was sentenced for because he committed that crime. Why the public trust enhancement? Is he the pharmacist in a public trust position? I mean, a position of public trust? Is he an employee of the government? Is he highly regulated? He is regulated by both the state and the DEA. But you don't have to be a public employee, first off. And, secondly, to get back to the discretionary issue, the other pharmacists there wouldn't fill these prescriptions. That's how awful they were. He exercised his discretion to fill them. I'm a little concerned about the breadth of what you're suggesting. So, I mean, extrapolated, if you're licensed and you break some regulation, won't this enhancement always be applied then? Well, I don't know if it would always be applied, Your Honor. I'm afraid that you're relying on the licensure and he broke some regs. I think if we're in a position like this, with the facts of these, where you have a pharmacist who is actually filling bogus prescriptions, taking the prescriptions, not caring that they're completely bogus, and then filling them, there you're going to have an abuse of public trust. I think we have to parse. There are really two questions here, and I think both sides are blending them, for lack of a better word. The first question is, did the defendant, as a licensed pharmacist, occupy a position of public trust? And if so, did he abuse his position of public trust in a way that significantly facilitated his crime? And I think that's almost where we should be spending a little more attention than whether a hypothetical pharmacist, just because he's licensed, occupies a position of public trust, or just has a special skill. Well, I think the answer is yes. He did use this public trust in a way that facilitated his crime. No, no, the first part of that question was, does he occupy a position of public trust? The second was, does he violate it? And the answer is yes. Again, as a licensed pharmacist, he occupies a position of trust. Well, he uses it. He took in prescriptions that were fraudulent. He actually assisted the co-conspirators. That's how you say he abused it. Why does he occupy a position of public trust? Just because he's a pharmacist? I think in this case, yes. All pharmacists occupy positions of public trust. If they're going to abuse... You're saying he committed a wrong therefore. I thought Judge Barry's question was, first of all, does he occupy a position of public trust? And the answer is yes. And I think that the rub is on the second point. In other words, is he using that position of trust in a way that facilitates his crime? Why does he occupy a position of public trust? Because a pharmacist is given... I mean, it's like a doctor. I mean, a doctor has the ability to hand out prescriptions, write prescriptions. We trust that a doctor isn't going to write out... All doctors occupy positions of public trust because they write prescriptions. A doctor who abuses that trust, yes. You're justifying the status by the wrong is, I think, what you're doing. Well, Your Honor, a doctor has... The commentary lists doctors as private examples of private trust. Well, again, doctors, lawyers, all these different professionals occupy... Depending on who the victim is, you can look at what trust they're abusing. Do you have to look at what they do, what wrongful conduct they commit, in order to determine whether they are in a position of public trust or not? Yes, so if a doctor mistreats a patient... That doesn't put the cart before the horse? I don't think so, Your Honor. If a doctor doesn't treat a patient correctly or misuses a patient's information, that would be an abuse of private trust. If a doctor is out handing out prescriptions that he shouldn't be giving... I can see why a U.S. attorney is in a position of public trust. I can see why a U.S. marshal might be in a position... But, Your Honor, there's no... Just their position. Just their position. There's no requirement... But you are in a position of public trust, right? There's no requirement that it be a public official. And I'd like to cite two cases for you that weren't in my briefs that I did give to Mr. Goldberger. That's Harrington out of the Fifth Circuit, 114 F. 3rd, 517. And that's a case about an attorney who abused his decision of public trust by basically ginning up fake subpoenas. He wasn't a public lawyer. He was just a attorney, licensed by the state, expected to behave in a certain way. He abused that right. And Snook, which is 366 F. 3rd, 439. That's a Seventh Circuit case about a private employee who was abusing the public trust by... You know, he was in charge of a wastewater... And he was, you know, flooding the water with pollutants. And that case, I want to point out, had a strong dissent where the dissent said, well, he's not a licensed guy like a doctor and attorney. Here we do have a licensed guy who has the keys to the medicine cabinet... So a position can sometimes put somebody in a position of public trust depending on the conduct in which they engage. Like a doctor. That's what I'm saying. Not always, but sometimes. Yes. And again, I just want to go back to the initial point, which is, again, he didn't raise this. It's plain error. And he hasn't cited one thing that says this is plainly erroneous. Mr. Goldberg says that typically what we do is we see if the enhancement applies or not. But there's nothing in this... To provide guidance. There's certainly nothing in this guideline that says it wouldn't apply to a pharmacist. And this case law, again, that applies to doctors and lawyers, there's no reason why it wouldn't apply to a pharmacist in this situation who's doing this type of conduct. If I could move on to the role, if you want me to discuss that. First, we'll start off with... Is that what you were going to use? Supervisor role? Yes. Again, first off, it's clear error review. And this court said in Richards there should be substantial deference to the district court who sees these things more often. It's fact-intensive. And then I think there's two bases to which to affirm this role enhancement. Number one was the one that the district court explicitly found, which is that this defendant supervised and directed these co-conspirators. And Judge Chigaresi pointed it out. He explained how to write the prescriptions in such a way. He told them when not to use certain prescription pads. Is that supervising or just telling them how to better commit the crime? This isn't like a logistical thing. Like, you know, come at 5 and I'll give you the drugs. I mean, the whole point of this was to make it clear... I tend to think of a supervisor as a person who's giving direction, who is, you know, like over... Maybe control is a word, but who supervises, like, a group of people and tells them, you do this, you do this, you do that. Well, that's what he was essentially doing here. These were long-time customers. I thought what he was doing was telling them how to avoid detection. Well, for the entire conspiracy. And the whole point of this conspiracy, again, getting back to the pharmacist thing, was that it looked perfectly legitimate. He was taking prescriptions, filling them as if they were real prescriptions, handing out the drugs just as he would on a normal, everyday basis to make this appear perfectly legitimate. And so it was very important that they wrote the correct... If I say to a co-defendant, cover me while I go and rob the bank, I'm supervising under your theory. Is that accurate? As long as I tell somebody to do something else in connection with the crime, I would be supervising? I don't think so, Your Honor. I think that this is far more involved than that. I mean, he is very involved in how this works, he's very involved in... And they're taking his advice, he's giving them exactly how this should be done, how to avoid detection, how to make sure that this whole thing stays appearing legitimate. Is telling somebody how to avoid detection supervising? In certain circumstances, I think it could. If a drug dealer was telling a mule how to bring drugs across the border, this is what you do, this is how you do this, this is how you don't get detected, I think he would be a supervisor or manager of that individual. And the second point, which I wanted to make sure I get to, is there's undisputed evidence that he directed and instructed John DiCiara, who was his subordinate at the pharmacy, what to do. Get a hold of these co-conspirators, tell them when I'm going to be here. That's enough. And that fact itself was not disputed. The defendant disputed the enhancement, and if you look at his actual objection, I think it's on pages 158 and 59 of the appendix, his real beef with that paragraph was, hey, I don't think that qualifies as a manager or supervisor. And then he listed one fact that he disputed, which had to do with, I didn't know about surveillance. He doesn't dispute that fact, that he told DiCiara, hey, get in touch with the co-conspirators, tell them when I'm going to be here. And that's enough under this court's case law. If you look at Chao, that's a case where, you know, the defendant told his handyman to go clean something. That's considered enough under the rule. Of course, you can only hold that enhancement if you hold the abusive position of trust enhancement, correct? Because if this was not an abusive trust, you can't give the aggravating role. You can't give an aggravating role adjustment. Well, we could only not, we couldn't give the aggravating role adjustment if the other adjustment was for special skill and not abusive trust. That's what I'm saying. That's exactly what I said. I mean, you have to hold the, you have to, we have to affirm, or whatever we do, with the abuse of position of trust before we even reach, if you can't get the aggravating role, unless you have that. Unless, he could get it, he could get the role enhancement, even if he doesn't get the abusive trust. He can't get it if it's special skill. Unless it's special skill, exactly. Well, actually, why isn't special skills more appropriate than abusive trust? Well, first of all, it could be both. It could be both. The guideline doesn't say it has to be one or the other. And I mean, I can't say that I've gone through all the special skill law, but I would think the special skill would be more appropriate here if, for example, he was using his pharmacological knowledge to assist a meth lab or something in how to make drugs. I mean, that would be using his special skill. Here, he's more of using his position that we've entrusted him not to fulfill false prescriptions. And I guess my last point... What should we do about the forfeiture order issue? Well, I'd ask this court to follow the First Circuit in, I guess it's Yeehee Cabrera, which was on a similar procedural posture. And in that case, they ordered the district court simply to amend the judgment to include the forfeiture order. It's clearly a housekeeping rule that could be fixed at any time, and which we would have fixed if I knew that we wouldn't be, you know, butting up against this court's jurisdiction. Should we take the deputy clerk out from under the bus if we do that? Thank you, Mr. Rubin. Nowhere in the government's brief was the assistant U.S. attorney ever put in the general vicinity of the bus for not having seen that the government's interests were protected either at the time of the plea or in relation to the forfeiture. You can't just... What did you say? Command. You're saying you're complaining because the government didn't object to sentencing? I'm not complaining. Doesn't that come with some ill grace? Because you didn't object either. You, your counsel. Nobody objected. The defense does not object to things which don't harm the defendant. I'm saying the government... You lie back and wait until you see what happens and then you object when you get to the appeal. If it harms. Even though you can do what was wrong. Oh no. And if you don't do it until it's appealed then you may have a plain error problem. Okay. There's a rule of governance that deals with that. I think I'm aware of that. Yes. Yes. But you can't just remand to attach the forfeiture here without having made findings about whether the oral aspect that has been complied with and that hasn't been raised in this appeal. I don't suggest... I suggest you do not give relief to the government on our appeal that they didn't appeal for. With respect to the... So you're saying there should be no forfeiture at all? Yes. That's right. There's a simple rule. It wasn't followed. The rule... The forfeiture is a nullity. If they think they have a remedy now to fix their error they can ask for that remedy in the district court. Isn't the remedy rule 32? It's a clerical error? It was stipulated to. It was agreed to. It was raised at sentencing looking for relief. Look, I agreed to forfeiture. It's rule 36 you're referring to. But it's a clerical... 36 and 32. Yes, it's a clerical error if the judgment does not reflect what occurred at the sentencing orally. That's when it's clerical. It's not clerical when nothing happens at the sentencing hearing or in the judgment. Then the judgment correctly reflects what happened at the sentencing hearing and that has to be determined remand. That's not the subject of this appeal. The abusive position of trust does not apply. I do suggest that the special skill is more applicable. But again, this is not something that the government asked for. It wasn't imposed and the government shouldn't get relief for something that it didn't seek and ask for and obtain. Now let me just say with respect to other cases the fullest compilation of authority if you want to look to the other circuits is the 11th Circuit cases. The 11th Circuit has looked more often at this issue than any other. That 7th Circuit dissent that the government mentioned Judge Coffey is very good but also the most recent case is the Lewis case L-O-U-I-S in the 11th Circuit from 2009 on this subject. And I could provide the site if you want. I'm just going to have one word on the role in offense that once the defense defendant objected as they did as we did in the district court my predecessor to this enhancement the burden was on the government to establish it. The government assumed that burden and presented evidence with respect to the how to fill out the prescription pad. They did not rely to support the enhancement on this Chiara the other pharmacist in response to the defendant's objection. And this court's decision in Gricko written by Judge Alito says you can't look back to the pre-sentence report to support a challenged enhancement after a proper objection is made. So the only basis for the supervisory role enhancement was the advice given on how to fill out prescriptions to get more Medicaid more. Because that's what the government offered at the sentencing hearing and that's what the judge relied on at the sentencing hearing in response to the objection. Thank you. Thank you, Mr. Kohlberger. Thank you very much. The arguments are very well presented. We'll take the case under advisement.